**FILED**

**June 1, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In re: A.L.-1, J.L., K.L., and W.L.**

**No. 25-21** (Webster County Nos. CC-51-2023-JA-62, CC-51-2023-JA-63, CC-51-2023-JA-64, CC-51-2023-JA-65)

## MEMORANDUM DECISION

Petitioner Mother A.L.-2[1] appeals the Circuit Court of Webster County's December 28, 2024, order terminating her parental rights to her children, A.L.-1, J.L., K.L., and W.L. Petitioner asserts that the evidence presented below demonstrated that she complied with all the terms and conditions of her improvement period and that the circuit court erred in terminating her parental rights. This Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon review, we find there to be no substantial question of law and no prejudicial error. Accordingly, a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

## I.     Facts and Procedural History

In November 2023, the West Virginia Department of Human Services (DHS) filed an abuse and neglect petition against petitioner and the children's father[2] alleging that it had received a referral that the family was homeless.[3] Upon investigation, the DHS learned that the utilities at their home had been shut off and that the family was evicted for nonpayment of rent. The petition alleged that the family was living with the paternal grandparents, whose home was "very cluttered" with "holes in the walls," that the children were "sleeping in one small bedroom with mattresses on the floor," and that the home's other two bedrooms were "blocked off with clutter and cannot be accessed" such that the Child Protective Services (CPS) "[case]worker does not know where the adults in the home sleep." The petition further alleged that the children had numerous unexcused absences from school, had not attended school since October, and that petitioner "had signed an intent to homeschool . . . but she does not do schooling with the children daily and does not have a school curriculum[.]" Based upon an interview with the child K.L., who was then nine

---

[1] Petitioner appears by counsel Steven B. Nanners. The West Virginia Department of Human Services is represented by Attorney General John B. McCuskey and Assistant Attorney General Andrew T. Waight. Counsel Mackenzie Holdren appears on behalf of the children.

[2] The father voluntarily relinquished his parental rights at the final dispositional hearing conducted on December 9, 2024; his parental rights are not at issue in this appeal.

[3] The petition also named the parents' unborn child as a child respondent; however, that child is deceased and is not a subject of these proceedings.

years old, the petition also alleged that petitioner "gets drunk and gets woozy and 'I will stay up with her to help her not fall and to keep the wood stove going.[']" According to the petition, drug screens performed on three consecutive days immediately preceding the filing of the petition "appeared to be diluted."

A contested preliminary hearing was conducted on November 27, 2023, at which hearing the CPS caseworker, petitioner, and the father testified.[4] The circuit court found that petitioner "do[es] not have fit, apt and suitable housing" for the children[5] and that the DHS "established imminent danger to the health, safety and welfare" of the children exists such that the legal care, custody, and control of the children was ordered to continue with the DHS. Petitioner was granted twice weekly supervised visits with the children for two hours, on the condition that petitioner remain drug and alcohol free, and "not be in the presence of anyone convicted of any felony offense or any misdemeanor involving drugs or alcohol," among other conditions.

At the adjudicatory hearing conducted on January 5, 2024, the circuit court took judicial notice of the evidence presented at the preliminary hearing and adjudicated petitioner of neglecting the children for failure to provide them with fit, apt, and suitable housing.

The DHS submitted a dispositional case plan dated January 9, 2024, in which it noted that although repairs to the paternal grandparents' home "had been made and the children now have adequate sleeping space," the home "was still very cluttered and the porch was covered in 'junk.'" The DHS recommended that petitioner receive a six-month improvement period requiring that she produce negative drug screens, participate in individualized parenting and adult life skills services, obtain apt, and suitable housing, and submit a homeschooling plan/curriculum. In her report filed February 1, 2024, the guardian ad litem noted that the children and petitioner share a bond and joined in the DHS's recommendation that petitioner receive a six-month post-adjudicatory improvement period, with conditions.

A dispositional hearing was conducted on February 2, 2024, at which hearing the CPS caseworker, petitioner, and the father testified. The circuit court also considered the report of the guardian ad litem. Although the court noted it was concerned by petitioner's "lack of motivation," and that the living conditions were "detrimental to the children's emotional well-being," it also acknowledged the DHS "failed to use reasonable efforts because of [its] failure to require [petitioner] to drug screen and in failing to go to the home in a timely manner." The circuit court granted petitioner a six-month post-adjudicatory improvement period, the terms of which required that petitioner obtain suitable housing within 60 days, refrain from using drugs and alcohol and submit to random drug screening, refrain from being in contact with persons possessing or using

---

[4] The transcript of the preliminary hearing is not a part of the appendix record.

[5] The circuit court determined that the DHS "ha[d] not met its burden as to drug use or schooling."

2

drugs and/or alcohol, and complete parenting and adult life skills classes. Petitioner was also ordered to undergo a forensic psychological evaluation.[6]

As recounted in the September 6, 2024, DHS case plan, a review hearing was conducted on June 3, 2024, and the time allotted for petitioner's twice weekly visits with the children was increased to three hours. According to the case plan, petitioner had obtained employment and had adhered to the terms and conditions of her improvement period, including obtaining suitable housing.[7] The DHS recommended that "the children be gradually reunited with [petitioner] over the next 60-90 days with an extension of her improvement period."

Based upon recent information indicating that petitioner had a new boyfriend, G.L., the dispositional hearing scheduled for September 13, 2024, was continued.[8] The circuit court ordered the DHS to conduct a criminal background check on G.L. and that petitioner be prohibited from discussing G.L. with the children "and/or from making any promises to the [children] regarding [G.L.]."

The continued dispositional hearing was conducted on October 10 and 11, 2024. The DHS obtained G.L.'s criminal history record from Florida and Maryland, which revealed convictions for domestic battery, manufacturing and distributing narcotics, unlawful possession, theft, and violation of probation occurring between 2003 and 2008.[9] The CPS caseworker testified that she advised petitioner that the DHS would "not approve of [G.L.] living in her home with her children based on his past criminal history." According to the caseworker, petitioner assured her that "she would choose her children" over G.L. Petitioner's parenting provider from Family Crossroads also testified. She related that petitioner told her that she obeyed the circuit court's order prohibiting her from discussing G.L. with the children. The caseworker and parenting provider both testified that they had observed G.L.'s vehicle parked at petitioner's home since the previous hearing. The caseworker testified that she further observed petitioner driving G.L.'s vehicle on the day of the hearing, prompting her to become concerned that petitioner "has not chosen her children" over G.L.

Petitioner testified that G.L. works the night shift at the same restaurant where she works the day shift. Regarding the status of their relationship, petitioner admitted that she and G.L. "still hang out[;]" that "[r]ight now he stays with me most of the time[;]"and that whether she continued to see G.L. would "be up to the courts to decide." When asked whether she would break up with G.L. because, given his criminal background, "he's not a good person to have around [her]

---

[6] Petitioner underwent a forensic psychological evaluation on March 20, 2024, which concluded petitioner's prognosis for improved parenting to be "poor."

[7] It was suggested in the case plan that petitioner and the father had separated.

[8] The transcript of the September 13, 2024, hearing is not a part of the appendix record.

[9] G.L.'s criminal history record was admitted into evidence as State's Exhibit 1 and made part of the appendix record.

children," petitioner responded that she would break up with G.L. if the circuit court ordered her to.

The DHS recommended a 90-day extension of petitioner's improvement period. The guardian ad litem objected. While acknowledging that the children "love their parents" and had a bond with them, the guardian ad litem argued that termination of petitioner's custodial rights was warranted because petitioner had continued her relationship with G.L. despite his criminal background and because petitioner's testimony that she would break up with G.L. if the circuit court ordered her to was simply not credible.

At the conclusion of the hearing, the circuit court cautioned petitioner that successful completion of the terms and conditions of an improvement period "doesn't mean that I have to reunify" because "I do what's in the best interest of the children." While noting that the record "would support [] termination" of petitioner's parental rights, the court considered the petitioner's bond with the children and "reluctantly, grant[ed] [her] a 45-day extension to [her] improvement period." As a condition of her improvement period, the court ordered that petitioner discontinue her relationship with G.L. and cease all contact with him outside of work, including as it relates to her use of G.L.'s vehicle.[10]

A final dispositional hearing was conducted on December 9, 2024, at which hearing petitioner, the father,[11] and the CPS caseworker testified. The DHS produced evidence of a Facebook page that included a photograph of petitioner with G.L. that was posted on October 16, 2024 (after the previous hearing), and that indicated petitioner had changed her last name to that of G.L.[12] thereby demonstrating, the DHS argued, that petitioner had continued her relationship with G.L. in violation of a condition of her improvement period. Petitioner testified that the Facebook page was not current and, when asked whether the man in the photograph with her was G.L., petitioner responded, "I suppose so. It looks like him." Petitioner denied that G.L. was living in her home or that she had any contact with him outside of work. She admitted that she continued to drive G.L.'s vehicle but claimed that G.L. had "signed [the vehicle] over" to her sometime after the October hearing. The father testified that he was fixing up a home near petitioner's residence and that he had observed G.L. frequently going "in and out" of petitioner's home since the last hearing. The father testified that he saw G.L. at petitioner's home "last night."[13]

The CPS caseworker confirmed that evidence was presented showing that petitioner violated a condition of her improvement period by continuing her relationship with G.L. The DHS

---

[10] The circuit court also ordered the DHS to file an amended case plan.

[11] As noted, the father voluntarily relinquished his parental rights at this hearing.

[12] There was no evidence presented that petitioner had married G.L.

[13] During cross-examination of the father by petitioner's counsel, the father suggested that the family would have "been reunified had [petitioner] not filed for a divorce."

4

recommended that petitioner's custodial rights be terminated.[14] The guardian ad litem argued that petitioner's parental and custodial rights should be terminated, asserting that petitioner's testimony that she had discontinued her relationship with G.L. was not credible and that G.L.'s presence in petitioner's home rendered the home unfit and unsuitable for the children.

At the conclusion of the dispositional hearing, the circuit court found petitioner's testimony that she was no longer in a relationship with C.L. to be "so evasive" as not to be credible, while finding the father's testimony that he saw G.L. at petitioner's home the night before the December 9th hearing to be credible. The circuit court further determined that petitioner's testimony that G.L. "signed over" title to his vehicle to her after the October hearing was merely a subterfuge to conceal their relationship. The court concluded that petitioner "has, in violation of this [c]ourt's order, maintained and continued contact with [G.L.], who is not a fit, apt, and suitable person for which [sic] the children should be around." Accordingly, the circuit court denied petitioner an extension of her improvement period. It then found there to be no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the foreseeable future and no less restrictive alternative available to protect the children's welfare than termination of her parental rights; the court terminated petitioner's parental rights as being in the best interests of the children and so that permanency may be achieved. The circuit court granted petitioner one two-hour visit with the children per week pending an appeal so long as petitioner remains drug and alcohol free and complies with all prior orders. It is from the circuit court's December 28, 2024, dispositional order that petitioner now appeals.

## II.      Standard of Review

On appeal from a dispositional order in an abuse and neglect proceeding, this Court defers to the circuit court's factual findings and will not set them aside "unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). The final order and ultimate disposition in such cases is reviewed for an abuse of discretion. *See* Syl. Pt. 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).

## III.      Discussion

In this appeal, petitioner argues that the circuit court erred in terminating her parental rights, asserting that, instead, the court should have returned the children to her custody or granted her a further extension of her improvement period. Petitioner argues that the evidence presented at the final dispositional hearing demonstrated that she complied with all the terms and conditions of her improvement period, including discontinuing her relationship with G.L. and ceasing all contact with him outside of work. She asserts that her testimony in this regard was credible while the father's testimony to the contrary was not credible and, thus, insufficient to support the circuit

---

[14] As noted, the circuit court previously ordered the DHS to amend its case plan, which had recommended that petitioner be gradually reunified with the children. The DHS failed to file an amended case plan.

court's decision to terminate her parental rights. Alternatively, petitioner argues that, in any event, the circuit court acted arbitrarily in prohibiting her from maintaining a relationship with G.L.; according to petitioner, because G.L.'s criminal convictions were remote in time, they were not a proper basis for the court to conclude G.L. was a danger to the children such that petitioner must cease contact with him as a condition of her improvement period.

To the extent petitioner argues that the circuit court erred, in the first instance, by ordering, as a condition of her improvement period, that she discontinue her relationship with G.L. based upon his criminal history, we note that petitioner failed to object to this restriction during the proceedings below.[15] Specifically, petitioner never asserted that G.L.'s criminal record (1) was so remote in time that it was not relevant to the proceedings, or (2) did not constitute proof that G.L. was a danger to the children. Similarly, petitioner never represented to the circuit court that G.L. was, in fact, a suitable person to be around the children despite his criminal history or otherwise. Had petitioner so argued, then the circuit court would have had a duty to make a record of the basis for the restriction. However, because petitioner failed to timely raise the issue, it is waived. We have often cautioned that "a party must alert a tribunal as to perceived defects at the time such defects occur in order to preserve the alleged error for appeal." *Hanlon v. Logan Cnty. Bd. of Educ.*, 201 W.Va. 305, 315, 496 S.E.2d 447, 457 (1997). As we have explained:

> The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made. . . . Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues [before this Court]. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.

*State ex rel. State Farm Mut. Auto. Ins. Co. v. Bedell*, 228 W. Va. 252, 264–65, 719 S.E.2d 722, 734–35 (2011) (quoting *Whitlow v. Bd. of Educ. of Kanawha Cnty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993) (citations omitted)).

As to petitioner's argument that the circuit court terminated her paternal rights based upon unreliable evidence, this argument is without merit. Petitioner asserts that the father's testimony that he frequently saw G.L. going "in and out" of petitioner's home—most recently on the night before the final dispositional hearing—was not credible because the father was upset that he and petitioner were divorced. Conversely, petitioner argues, her testimony that she was no longer in a relationship with G.L. was credible, including her claim that she continued to drive G.L.'s vehicle because G.L. had "signed [the vehicle] over" to her; that the photograph of petitioner and G.L. on Facebook indicating that petitioner had taken G.L.'s last name was not current; and that she had ceased all contact with G.L. other than seeing him at work. Petitioner thus asserts that the circuit

---

[15] Nor did petitioner raise this argument in her brief on appeal. Rather, petitioner presented this argument for the first time during oral argument before this Court. *See Argus Energy, LLC v. Marenko*, 248 W. Va. 98, 103–04, 887 S.E.2d 223, 228–29 (2023) (recognizing that matters first raised in oral argument are generally considered waived).

court erred in the manner in which it weighed the evidence. According to petitioner, the credible evidence presented proved that she complied with the condition of her improvement period requiring that she discontinue her relationship with G.L., and, accordingly, this Court should reverse the circuit court's order terminating her parental rights. We disagree.

Petitioner's argument turns on the circuit court's specific determinations as to the credibility of the evidence relating to whether she complied with the terms and conditions of her improvement period. *See In re D.H.*, 252 W. Va. 290, --, 922 S.E.2d 290, 303 (2024) ("[C]redibility determinations belong to the trier of fact, the circuit court, which must 'weigh[ ]the credibility of witnesses and render[ ] findings of fact.'" (quoting *In re Emily B.*, 208 W. Va. 325, 339, 540 S.E.2d 542, 556 (2000)). However, we are mindful that, as a reviewing court, we "cannot assess witness credibility through a record" and that it is "[t]he trier of fact [that] is uniquely situated to make such determinations[.]" *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Indeed, "this Court is not in a position to, and will not, second guess such determinations." *Id.* Likewise, this Court, in its appellate review, does not reweigh evidence presented before the court below or "overturn a finding simply because it would have decided the case differently[.]" *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177, Syl. Pt.1, in part. Rather, we "must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety[,]" *id.*, which we find, based upon the appendix record, is certainly the case. We are thus constrained to affirm the circuit court's findings based upon its first-hand assessment of the credibility of the evidence—in particular, the finding that petitioner continued in her relationship with G.L. and, by doing so, violated the terms and conditions of her improvement period such that terminating her parental rights was in the best interests of the children.

This Court has held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Indeed, it is apparent from the October 10-11, 2024, hearing transcript that the circuit court so advised petitioner, cautioning her that the disposition of her parental rights hinged on whether she discontinued her relationship with G.L. The circuit court properly found that by violating this condition of her improvement period, petitioner failed to correct the condition of neglect for which she was adjudicated (i.e., the failure to provide a fit, apt, and suitable home).[16] We, therefore, conclude that the circuit court did not abuse its discretion in finding there was no reasonable likelihood that the condition of neglect could be substantially corrected in the near future and that termination was necessary for the children's welfare. *See* W. Va. Code § 49-4-604(c)(6).[17]

---

[16] *See* Syl. Pt. 6, in part, *In Int. of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) ("At the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied[.]")

[17] To the extent petitioner argues that the circuit court should have granted an extension of her improvement period in lieu of terminating her parental rights because the reliable evidence presented below proved that she complied with all the terms and conditions of her improvement

Finally, based upon petitioner's strong emotional bond with the children, the circuit court ordered that she be granted one two-hour visit per week pending this appeal. Having now affirmed the circuit court's order terminating petitioner's parental rights, we direct the circuit court to evaluate whether continued visitation between petitioner and the children is appropriate, ensuring that "such visitation or continued contact would not be detrimental to the child[ren's] well being[,]" "would be in the child[ren's] best interest[,]" and "would not unreasonably interfere with their permanent placement." *In re J.G.*, 240 W. Va. 194, 208, 809 S.E.2d 453, 467 (2018) (internal citations omitted).

IV.    Conclusion

For the reasons stated above, we affirm the circuit court's order terminating petitioner's parental rights.

Affirmed.

**ISSUED:** June 1, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

**CONCURRING:**

Justice William R. Wooton

---

period, we reject this argument. As we have already concluded, the circuit court weighed the evidence and determined that petitioner violated a condition of her improvement period by continuing her relationship with G.L. *See Michael D.C.*, 201 W. Va. at 388, 497 S.E.2d at 538. In its discretion, the circuit court assessed the overall success of petitioner's improvement period, *see In re F.N.*, 247 W. Va. 620, 626, 885 S.E.2d 558, 564 (2022), and determined that termination of her parental rights, rather than an extension of her improvement period, was consistent with the best interests of the children. *See* W. Va. Code § 49–4–610(6). "[C]ourts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened[.]" *In Int. of Carlita B.*, 185 W. Va. at 629, 408 S.E.2d at 381 (quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Accordingly, the circuit court did not abuse its discretion in denying petitioner a further extension of her improvement period.

Wooton, Justice, concurring:

While I concur in the outcome of this case, I feel compelled to write separately to emphasize my concern regarding the circuit court's restriction prohibiting the petitioner from engaging in a relationship with G.L. It is clear that the court's decision to eventually terminate the petitioner's parental rights to the children was influenced by her relationship with G.L. and by his prior criminal convictions, yet it was not until oral argument before this Court that the petitioner argued that G.L.'s criminal history was so remote that it was not relevant to the proceedings nor did it constitute proof that G.L. was a danger to the children. Because the petitioner failed to preserve for appeal any issue regarding her association with G.L., I am compelled to concur.

Although G.L.'s criminal history revealed convictions between 2003 and 2008, none of the crimes for which G.L. was convicted appear to pose a threat to children. It appears that G.L. has discharged all obligations related to those criminal convictions and has fully paid his debt to society. Significantly, since 2008 G.L. has not been charged with or convicted of any crime. Based on the limited record before us, there is nothing to suggest that G.L. would be an unsafe individual to have around children. Admittedly this Court does not have the benefit of a developed record from which to discern whether the restriction placed by the circuit court was unduly broad, but the restriction gives me pause. Unfortunately, petitioner did not timely challenge this limitation before the circuit court and did not make a record upon which the propriety of this limitation could be reviewed. Accordingly, I concur in the majority's conclusion, which implicitly accepts the restriction as proper and holds that the circuit court did not abuse its discretion in finding that there was no reasonable likelihood that the condition of neglect could be substantially corrected in the near future, and that termination was necessary for the children's welfare. See W. Va. Code § 49-4-604(c)(6).

I write separately to emphasize that while courts have discretion to fashion restrictions in abuse and neglect proceedings, this discretion "is limited by constitutional and statutory bounds." *See In re A.E.*, --- W. Va. ---, 927 S.E.2d 447, 454 (2026) ("the authority and discretion afforded to courts in abuse and neglect cases is limited by constitutional and statutory bounds, and courts must be able to explain the factual reasoning and legal basis for any obligation imposed[.]"). Moreover, this discretion "does not serve as a blanket of immunity for the circuit court to manage abuse and neglect cases as its whim, personal desire, or docket may fancy." *State ex rel. C.H. v. Faircloth*, 240 W. Va. 729, 745, 815 S.E.2d 540, 556 (2018) *citing J.G., II*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018).

My concern is that courts may attempt to implement arbitrary restrictions that bear no relationship to the welfare of the children. Certainly, a party can challenge a restriction for a number of reasons, including: that the restriction exceeds constitutional and statutory bounds; is not relevant; or that the restriction has no bearing on the best interests of the child—the "polar star by which the discretion of the court will be guided." Syl. Pt. 3, in part, *In re Timber M.*, 231 W. Va. 44, 743 S.E.2d 352 (2013).

Had the petitioner timely asserted that the restriction prohibiting her association with G.L. was improper, it would have been incumbent on the court to afford the petitioner a meaningful opportunity to be heard, which would have resulted in the development of the issue capable of

appellate review. The majority opinion acknowledges that West Virginia Code § 49-4-601(h) requires that the petitioner "shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." However, that statute does not change the obligation of petitioner to timely raise and make a record on the allegedly improper restriction. Because the petitioner did not challenge the circuit court's restriction below, I respectfully concur.