447 S.E.2d 543

**STATE of West Virginia ex rel. Richard L. KINCAID, Petitioner,**

v.

**Larry PARSONS, Superintendent, South Central Regional Jail, and the Regional Jail and Correctional Facility Authority, Respondents.**

No. 22203.

Supreme Court of Appeals of West Virginia.

Submitted June 28, 1994.

Decided July 14, 1994.

Suzanne M. Weise, DiTrapano & Jackson, Charleston, for petitioner.

Darrell V. McGraw and Chad Cardinal, Charleston, Office of the Atty. Gen., for respondent.

NEELY, Justice:

The Supreme Court of the United States decided in *Helling v. McKinney,* 509 U.S. ——, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) that an inmate states a cause of action under the *U.S. Const.* Amend. VIII when he alleges that prison officials have, with deliberate indifference, exposed him to levels of environmental tobacco smoke that pose an unreasonable health risk.

On 25 March 1994 Larry Parsons, the administrator of the South Central Regional Jail, announced that due to health, safety, maintenance and sanitation concerns, the South Central Regional Jail (SCRJ) would eliminate all tobacco use at SCRJ by 1 June 1994. The plan to eliminate tobacco use included information pamphlets, solicitation of assistance from support groups such as the American Cancer Society, American Lung Association, and additional counselor training. On 1 April 1994 inmates were notified of the tobacco phase-out schedule.

Three days after notice was given to the inmates, inmate Richard Kincaid filed a document entitled "Request for Immediate Temporary Injunctive Relief" in this Court, and because the Court concluded that the denial of smoking privileges to persons housed in a jail requires Court scrutiny, we granted Mr. Kincaid's petition as a writ of habeas corpus, appointed counsel and set the case for argument.

### I.

On 18 April 1994, Mr. Parsons posted a memorandum to all inmates explaining how the facilities' around-the-clock medical staff and trained substance abuse counsellors would assist inmates who might have difficul-

ty stopping tobacco use. Importantly for our decision here, the SCRJ's tobacco ban included *smokeless* tobacco (i.e., snuff and chewing tobacco)—substances that are entirely beyond the contemplation of *Helling, supra.*

Mr. Parsons' memorandum reminded inmates of the Narcotics Anonymous and Alcoholics Anonymous 12–step substance abuse programs available at the facility. These methods of substance abuse therapy are available to inmates, and the memorandum explained that educational material including video tapes would be available to inmates. Remarkably, however, although the health advantages of a tobacco-free environment were extolled to the inmates, the staff of the facility were provided with areas in which they could smoke, and no effort was exerted to force staff who chose to smoke during off-duty hours into counseling or substance abuse therapy.

Although this case raises important questions concerning the extent to which persons awaiting trial can be denied the use of such things as tobacco in the absence of a compelling government interest related directly to the security of their detention pending trial, and other important questions concerning the right of people to make choices concerning such things as smoking *versus* longevity, we decide this case today only on the narrow grounds of legislative rule making and our administrative procedures act.

### II.

The respondents have adopted a rule at the Regional Jail that is not only a drastic change from long-standing custom and usage, but is also in direct conflict with the rules at other regional jails and prison facilities in this State. The decision to impose such an important rule cannot be left to the sole discretion of the administrator of one regional jail; rather, the State Administrative Procedures Act (APA) and *W.Va.Code* 31–20–9 [1993] dictate that any legislative rule of this nature must be promulgated pursuant to the APA's formal rule-making process.[1]

---

**1.** This is not to suggest that there cannot be

facility-related variations in the rule to take into

The powers and duties of the Regional Jail and Correctional Facility Authority are fully set forth in *W.Va.Code* 31–20–5 [1994]. Both the Authority and the Jail and Prison Standards Commission (Commission) are governed by the provisions of the West Virginia Regional Jail and Prison Authority Act, *W.Va.Code* 31–20–1 [1989] *et seq.* The Commission is charged with the duty of prescribing "standards for the maintenance and operation of prisons, county and regional jails." *W.Va.Code* 31–20–9(1) [1993]. *W.Va.Code* 31–20–9(2) [1993] then provides that the Commission shall— "[p]romulgate the rules pursuant to the provisions of [the APA] as are necessary to implement the provisions of this article, including, without limitation, minimum jail, work farm and correctional facility standards[.]"

■ The rule-making procedures of the APA, *W.Va.Code* 29A–1–1 [1982] *et seq.,* are straight forward. The APA contains comprehensive procedures for the proper promulgation of legislative rules. Those rules adopted pursuant to the APA have the force and effect of law. To ensure that each rule receives the most careful consideration by an agency, public notice, public comment and legislative review are required by the APA. *W.Va.Code* 29A–3–5 [1994].

■ The total tobacco ban the respondent seeks to impose at the SCRJ clearly falls within the classification of a "legislative rule." *W.Va.Code* 29A–1–2(d) [1982] provides:

(d) "Legislative rule" means every rule, as defined in subsection (i) of this section, proposed or promulgated by an agency pursuant to this chapter. Legislative rule includes every rule which, when promulgated after or pursuant to authorization of the legislature, has (1) the force of law, or (2) supplies a basis for the imposition of civil or criminal liability, or (3) grants or denies a specific benefit. *Every rule which, when effective, is determinative on any issue affecting private rights, privileges or interests is a legislative rule.* Unless lawfully promulgated as an emergency rule, a legislative rule is only a proposal by the agency and has no legal force or effect

consideration variations in the nature of the

until promulgated by specific authorization of the legislature. Except where otherwise specifically provided in this code, legislative rule does not include (A) findings or determinations of fact made or reported by an agency, including any such findings and determinations as are required to be made by any agency as a condition precedent to proposal of a rule to the legislature; (B) declaratory rulings issued by an agency pursuant to the provisions of section one [§ 29A–4–1], article four of this chapter; (C) orders, as defined in subdivision (e) of this section; or (D) executive orders or proclamations by the governor issued solely in the exercise of executive power, including executive orders issued in the event of a public disaster or emergency.... [Emphasis added.]

The total ban on all tobacco products will have the force and effect of law, and it certainly will deny the inmates a pleasure time honored by custom. The passion with which smokers defend their prerogative to smoke is clear evidence that any attempt to ban smoking affects "private rights, privileges and interests."

■ In the present case, the respondents acknowledge that they seek to ban all tobacco at the Regional Jail "due to health, safety, maintenance and sanitation reasons." Respondents' Response Brief at p. 1. By their own admission, then, the respondents, in proposing to ban smoking, are clearly prescribing "standards for the maintenance and operation" of the Regional Jail. The Commission, however, has not promulgated any rules or regulations establishing a total tobacco ban as set forth in the Act. No opportunity for public comment or legislative review of the merits of the new tobacco ban has been provided. Instead, the respondents have chosen to ban smoking and the use of chewing tobacco and snuff without following the rule-making procedures clearly required by the APA. The rule in question was abruptly adopted by respondent Parsons without prior notice to anyone.

■ Smoking is a valuable privilege that has been afforded inmates since the inception

physical plants.

of the prison system. In fact, according to the annual report of the West Virginia Commissioner of Public Institutions for the period July 1, 1969 to June 30, 1970, inmates could earn money through the prison industries department *producing tobacco* products. *State ex rel. Pingley v. Coiner,* 155 W.Va. 591, 604, 186 S.E.2d 220, 228 (1972). Although the right to smoke probably does not rise to the level of a State constitutional right in a prison context, it is clearly a customary right that has arisen over centuries notwithstanding the valiant efforts of both puritans and public health advocates. Thus, before being deprived of such a long-standing and customary right, the petitioner and others similarly situated are clearly entitled to certain procedural safeguards. Among procedural safeguards is the simple requirement that the respondents comply with the rule-making provisions of *W.Va.Code* 31–20–5 [1994] and the APA, and provide for public comment and legislative review before a final rule is adopted. The legislature would then have the opportunity to review such a significant change in historic state prison policy.

### III.

■ Nonetheless, we recognize that non-smoking inmates and inmates who do not use smokeless tobacco have rights that are at least as compelling as the petitioner's right to smoke. As in all matters where people are required to live in close proximity, reasonable accommodation is the proper course. Everyone must understand that his right to swing his arm ends at the other chap's nose. Thus, to the extent that the Regional Jail Authority wishes to make a part or parts of the facility tobacco-free, and wishes to impose reasonable sanitation requirements upon the use of smokeless tobacco such as no spitting in anything but a proper receptacle, it may do so. In light of the Supreme Court's holding in *Helling,* even in the absence of legislative rules, inmates cannot be allowed in an unfettered manner to impose environmental tobacco smoke upon others who wish to avoid breathing such smoke. Any rule should give protection to the rights of non-smokers.

Accordingly, for the reasons set forth above, the writ of habeas corpus for which petitioner prays, as moulded, is awarded.

Writ awarded.