505 S.E.2d 430

**Anne Remick BLACK, Appellant,**

v.

**STATE of West Virginia CONSOLIDATED PUBLIC RETIREMENT BOARD, Appellee.**

**No. 24745.**

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1998.

Decided July 7, 1998.

Concurring Opinion of Justice Starcher Aug. 7, 1998.

512

Marvin W. Masters, Kathleen T. Pettigrew, Rachel Stickler, Masters & Taylor, Charleston, for Appellant.

Kenneth E. Webb, Jr., Bowles, Rice, McDavid, Graff & Love, Charleston, for Appellee.

MAYNARD, Justice:

The appellant, Anne Remick Black, appeals the June 13, 1997, order of the Circuit Court of Kanawha County which affirmed the final decision of the West Virginia Consolidated Public Retirement Board concerning the appellant's application for disability retirement benefits. The Consolidated Public Retirement Board rejected the appellant's claim that her disability retirement benefits should commence from April 26, 1994, the date the Board initially denied her application for benefits, and held instead that her benefits were to commence on June 11, 1996, the date of the Board's ultimate approval of the appellant's application for benefits. For the reasons set forth below, we agree with the circuit court that the appellant's benefits should not commence from April 26, 1994. We find, however, that the appellant's benefits should commence from September 11, 1994. Accordingly, we reverse the circuit court's order and remand this case for the circuit court to enter an order consistent with this opinion.

## I.

## FACTS

The appellant, Anne Remick Black, served as a West Virginia State Police Officer for approximately six years and is a member of the Death, Disability and Retirement Fund of the Department of Public Safety which is administered by the appellee, Consolidated Public Retirement Board ("the Board").[1]

---

1. W.Va.Code 5–10D–1(a) (1996) states in part:

There is hereby created a consolidated public retirement board to administer all public retirement plans in this state. It shall administer the public employees retirement system es-

tablished in article ten [§ 5–10–1 et seq.] of this chapter; the teachers retirement system established in article seven-a [§ 18–7A–1 et seq.], chapter eighteen of this code; the teachers' defined contribution retirement system

While employed as a state police officer, the appellant began experiencing sundry illnesses. As a result of these illnesses, the appellant last worked as a state police officer on September 14, 1992. At that time she began using her sick days and annual leave time while seeking treatment from various doctors.

On February 23, 1993, the appellant applied for disability retirement benefits with the Board pursuant to W.Va.Code § 15–2–30 (1985).[2] On the application for disability retirement, the appellant stated as the nature and cause of her total and permanent disability:

> I have Fibromyalgia with Chronic Fatigue and a sleep disorder. I get severe rashes from polymorphis [sic] light eruption. I can not be in sunlight, including light from windows, and brightly lit rooms. Raynaud's disease with terrible intolerance to cold or even handling cold objects. I am in constant pain from my muscles and joints. I become very nauseous doing any type of repitative [sic] activity, and when exposed to sunlight for a moderate length of time. I develope [sic] severe headaches and have periods of confusion. I tire very easily and have difficulty going up steps. I can only walk short distances at a time and then need to rest a few minutes before continuing on.

In 1994, when the Board first considered the appellant's disability retirement application, it had before it the reports of several doctors. These consisted, in part, of completed standard Consolidated Public Retirement Board Physician's Report forms. These forms include the following three questions:

> 6. In your opinion:
>
> Will this individual ever be able to return to their most recent employment with the state or subdivision thereof?
>
> 7. In your opinion:
>
> Will this individual ever be able to be gainfully employed in any capacity?
>
> 8. In your opinion:
>
> Is this patient totally and permanently disabled?

Each question is answered by marking either the corresponding "yes" box or "no" box. In response to the first question above, the appellant's treating physician, Dr. J.C. Bosley, appears to have originally marked the "no"

---

created by article seven-b [§ 18–7B–1 et seq.], chapter eighteen of this code; the death, disability and retirement fund of the department of public safety [West Virginia state police] created by article two [§ 15–2–1 et seq.], chapter fifteen of this code; and the judges' retirement system created under article nine [§ 51–9–1 et seq.], chapter fifty-one of this code.

**2.** W.Va.Code § 15–2–30 (1985) states:

> If any member while in active service of said department has or shall, in the opinion of the retirement board, become permanently disabled to the extent that such member cannot adequately perform the duties required of a member of the department from any cause other than those set forth in the next preceding section [§ 15–2–29] and not due to vicious habits, intemperance or willful misconduct on his part, such member shall be retired by the retirement board and, if such member at the time of such retirement under this section, shall have served less than twenty years as a member of said department, such member shall be entitled to receive annually and there shall be paid to such member while in status of retirement, from the death, disability and retirement fund in equal monthly installments during a period equal to one half the time such member has served as a member of said department, a sum equal to five and one-half percent of the total salary which would have been earned during twenty-five years of service in said department based on the average earnings of such member while employed as a member of said department, but if such member, at the time of such retirement under the terms of this section, shall have served twenty years or longer as a member of said department, such member shall be entitled to receive annually and there shall be paid to such member from the death, disability and retirement fund in equal monthly installments, commencing on the date such member shall be retired and continuing during the natural lifetime of such member while in status of retirement, one or the other of the two amounts, based upon either the aggregate of salary paid to such member during the whole period of service of such member or the period of twenty years or longer during which such member at the time of such retirement has, or shall have served as a member of said department, whichever shall be the greater, to be determined in the manner provided by subdivisions (1) and (2), subsection (c), section twenty-seven [§ 15–2–27(c)(1) and (2)] of this article.
>
> This section was amended effective March 12, 1994.

box before scratching it out and writing the word "error" over the deletion. In addition, he inserted several handwritten explanatory notations. Specifically, Dr. Bosley wrote "Possibly," and "Not expected for at least 12 or more months." In answer to the second question, Dr. Bosley again marked the "no" box before scratching it out and writing the word "error" above it. He then marked the "yes" box and wrote "Possibly" beside it. In answer to the last question, Dr. Bosley marked the "yes" box and wrote "at this time" beside it.[3]

Dr. Jacob, Dr. Welton, and Dr. Antonelli each submitted the same completed form and each marked "yes" in response to the first two questions and "no" in response to the third question. Dr. Radis submitted a report but made no recommendation as to long-term disability issues. Finally, the superintendent of the state police reported that the appellant's illness prevented her from ever again working as a state police officer.

By letter dated April 26, 1994, the Board notified the appellant that her disability retirement application had been denied because there was insufficient supporting medical information. The Board explained in part:

> The major factor in the approval of any disability retirement is the legal require-

ment that the applicant's doctor and a doctor selected by the Board both agree that the employee is totally and permanently disabled based on substantial medical reasons. In this connection, we expect any physician's examination to find substantial medical reasons why the employee should be granted disability retirement benefits.

The letter also advised the appellant that she could either (1) request another examination by a doctor chosen by the Board at her expense, or (2) appeal the Board's decision.

On July 13, 1994, the appellant requested an appeal by letter from her attorney to the Board.[4] For unknown reasons, however, the Board did not respond to the appellant's request for an appeal hearing. According to the appellant, her lay representative made numerous phone calls to the Board in order to secure a hearing, all to no avail. Finally, on January 26, 1996, the appellant submitted a new request for an appeal hearing. After several agreed extensions, an administrative hearing was held before a hearing officer on April 11, 1996. At this time, the Board considered a supplemental report of Dr. Bosley. This report, dated December 23, 1994 and received by the Board in February 1995,

---

3. Accompanying this form report was a letter from Dr. Bosley, dated February 4, 1993, in which he explained in part:

> The diagnosis of fribromyalgia, chronic fatigue syndrome, polymorphous light eruption has been made. She is undergoing current treatment. She is currently unable to work at her usual occupation as a West Virginia State Policeman. I have discussed this with her supervisors on numerous occasions. I feel this lady is chronically ill. Hopefully, this may improve to the point where she may return to work, but not in the near future.
>
> I anticipate the minimum of a year before this could be reached. This could change if she would develop acute systemic lupus or one of the collagen vascular diseases. She is currently suffering numerous symptoms including her chronic migratory arthralgias, her joint and muscle pain, soft tissue pain, fatigue, and the other symptoms of sunlight and cold that have been mentioned.
>
> The patient is unable to work at this time. I do not anticipate her to be able to do her job in a reasonable length of time.

4. A copy of this letter is included in the record. It was written by Marvin W. Masters of Masters

& Tayler, L.C. and addressed to James L. Sims of the West Virginia Consolidated Public Retirement Board. It states:

> My office has been retained to represent Anne R. Black in her efforts to obtain a disability retirement from the West Virginia State Police. It is my understanding that the board has previously considered Ms. Black's case and has denied her petition.
>
> The purpose of this correspondence is to inform you of my intention to appeal the Board's former decision. Therefore, pursuant to the provisions of Title 162 Legislative Rules, Series 2, Consolidated Public Retirement Board Section 162–8–2.5, I am requesting that a hearing of this appeal be scheduled.
>
> In addition, I am hereby requesting a copy of the complete file of Ms. Black concerning her application for disability retirement, including any medical records, reports or other written or recorded instrument. I have enclosed signed authorizations from Ms. Black which will permit the release of this information to me.
>
> Should you have any questions or require additional information in this matter, feel free to contact me at your convenience.

was submitted on the same standard form described above. In response to the first two questions, set forth above, Dr. Bosley marked the "no" box. In response to the third question, he marked the "yes" box.[5]

In May 1996, the hearing officer issued a recommended decision that the Board grant the appellant a non-service-connected disability retirement. Specifically, the hearing officer stated in part:

Although the lack of any current medical data is unfortunate, the applicant's status must be assessed upon the existing data coupled with her representations that she remains much the same. Due note must also be made of the rigorous and demanding character of the duties of a member of the Division of Public Safety. Giving particular weight to the opinion of Dr. Bosley, her primary treating physician, it is found that the applicant is unable to adequately perform the duties required of a member.

The hearing officer recommended that the benefits be awarded "on a prospective basis." The appellant, on the other hand, requested the payment of benefits from the date her sick and annual leave benefits were exhausted. The Board approved the recommended decision insofar as it awarded the appellant benefits and remanded the matter of the date of commencement of the award to the hearing officer for additional examination. At this time, the appellant's lay representative contended that the benefits award should be paid from April 26, 1994, the date the Board initially denied the appellant's application.

By supplemental recommended decision, the hearing officer denied the appellant's request for an earlier commencement date, and this denial was adopted by the Board by order of October 30, 1996.[6] The appellant

---

5. This report was accompanied by a letter from Dr. Bosley addressed to Marvin W. Masters, also dated December 23, 1994, in which Dr. Bosley states:

In regard to your December 6, 1994 correspondence concerning Anne Black I will try to be as helpful as I can.

I read your letter and certainly agree with your findings. Looking through the material it is obvious she has been seeing other doctors and they can no more determine a more accurate condition, anymore than I could in my report. I last saw her in August of 1993. She has since moved back to the Wheeling area.

This lady does have a chronic Fibromyalgia, which prevents her from working. This is also associated with a depressive problem second to the chronic disease. The only treatment I know is exercise and symptomatic treatment and rest. She does have a problem with sunlight and cannot work in any kind of sunlight and some artificial light because of her chronic photodermatitis [sic].

In regard to opinions on numbers 6, 7 and 8 and the Public Retirement Board physician's report I can honestly say they are wrong. Number 6 I think the answer is no, she will never be able to go back to work as a State Policeperson [sic]. Number 7 she cannot be gainfully employed because of her training at any employment at this time that would meet conditions that she could work under, however this could change if she was rehabilitated to an equitable job that would meet conditions that would not cause her to have worsening of her disease. Number 8, my answer is yes, again with the reservations of number 7, she is totally and permanently disabled from usual and gainful employment that she is by education and training capable of performing. Unless she could have extensive rehabilitation and be trained in a job that she could be fully employed I see no way she could work or be gainfully employed at this time.

I hope this helps you in this matter, I know it is somewhat vague, but her disorder is very confusing, vague and complex with wide spectrum of clinical opinions in the medical community.

6. In its supplemental recommended decision the hearing officer stated in part:

It is concluded that under [W.Va.Code] § 15–2–30, benefits may be payable only while a recipient is in the status of retirement, a status that may only be conferred by the Board and which rests in the sound discretion of the Board. No language exists which even suggests authority in the Board to pay benefits for any previous periods. The Legislature has simply not authorized such payments. It has been recognized that despite liberal rules of construction of statutes, benefits may not be conferred absent Legislative authorization. See footnote 9, *In Re Cain*, 197 W.Va. 514, 476 S.E.2d 185 (1996)

General principles also have equal application. Both Article 10, § 3, of the West Virginia Constitution and § 12–3–1 of the West Virginia Code prohibit the payment of public money except as authorized by law. Although the applicant asserts that "numerous cases" from the Supreme Court authorize back pay, no specific cases are cited and none can be found which would apply to the circumstances here encountered. Accordingly, it must be concluded that the applicant is not entitled to payment of disability retirement benefits for periods preceding the award of her benefits by the

appealed to the Circuit Court of Kanawha County which entered its final order affirming the Board on June 13, 1997. Specifically, the circuit court found:

> The Court acknowledges the misfortune to the Petitioner that the Board did not act upon Black's requests for appellate hearings. Further, this Court acknowledges that although the necessity of Board approval may encourage the Board to stall decision making, that is an issue for the Legislature, rather than this Court. The plain language of W.Va.Code § 15–2–30 requires that the member to be paid disability retirement benefits must already be "in status of retirement," meaning that the Board has already retired the member by approving her application for benefits.

We now consider this final order.

## II.

## STANDARD OF REVIEW

█ First, we note:

> Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syllabus Point 2, *Shepherdstown V.F.D. v. W.Va. Human Rights*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 2, *Walker v. West Virginia Ethics Com'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

## III.

## DISCUSSION

█ The issues are whether the appellant is entitled to disability retirement benefits for the period between the Board's denial of her application in 1994 and the subsequent award of benefits on appeal in 1996 and, if so, whether this Court has the authority to order such payments. The appellant's first argument hinges on her assertion that the Board erred when it denied her application in 1994. According to the appellant, the hearing examiner who recommended approval of benefits in 1996 had before him the exact same medical evidence that was before the Board in 1994. The appellant characterizes the supplemental report of Dr. Bosley submitted to the hearing examiner in 1996 as an explanation of his 1993 report. Second, the appellant complains that the Board failed to grant her an appeal hearing until two years after her original request in violation of "162 C.S.R. 8–2.5" which mandates the scheduling of such a hearing within sixty days of a request for an appeal.

The Board counters, first, that the circuit court's decision is proper in light of that court's limited scope of review and the fact that the Board properly denied the appellant's original application for benefits due to insufficient evidence. *Citing* W.Va.Code § 29A–5–4(g). Second, while the Board does

---

Board on June 11, 1996. It should be noted that when back benefits are sometimes paid under Workers Compensation ([W.Va.Code] § 23–4–1 et seq.), Unemployment Compensa-

tion ([W.Va.Code] § 21A–6–1 et seq.) and Social Security (42 U.S.C. § 423), the statutory schemes specifically state when such awards are to effectively start.

not dispute that the appellant's original request for an appeal was ignored, it essentially argues that constitutional and statutory provisions prevent the Board, the circuit court, or this Court from fashioning an appropriate remedy. In support of its position, the appellant points to the specific language of W.Va.Code § 15–2–30 (1994) [7] which provides that an applicant is not retired by the Board until that applicant becomes permanently disabled "in the opinion of the retirement board." According to the Board, it was not until 1996, after considering new evidence submitted by the appellant, that the Board determined the appellant was permanently disabled. Further, since an applicant cannot receive retirement benefits until she is in the "status of retirement" under W.Va. Code § 15–2–30, there is no legal basis for the payment of benefits to the appellant predating the Board's 1996 determination of disability. The Board concludes that W.Va. Code § 15–2–30 unambiguously provides for the "prospective" payment of benefits subsequent to the Board's determination of disability and, thus, precludes the "retroactive" payment of benefits sought by the appellant. Finally, the Board avers that the appellant's request for "retroactive" benefits ignores the constitutional and statutory prohibition against the payment of public moneys except as authorized by law and cites W.Va. Const., art. 10, § 3 and W.Va.Code § 12–3–1 for support.[8]

**7.** As noted in footnote 2, the 1985 version of this code section was in effect when the appellant first applied for disability retirement benefits in 1993. While the amendment to this section, effective March 12, 1994, rewrote this section, the operative language relied upon by the Board in its argument set forth above is the same in both versions. The applicable language in the 1994 version states:

> If any member while in active service of the division has or shall, in the opinion of the retirement board, become permanently disabled to the extent that such member cannot adequately perform the duties required of a member of the division ... such member shall be retired by the retirement board. Such member shall be entitled to receive annually and there shall be paid to such member while in status of retirement, from the death, disability and retirement fund in equal monthly installments during the lifetime of such member or until such disability shall sooner terminate, a sum equal to one half the salary received in the preceding twelve-month period[.]

The entire 1985 version of this code section is set forth in footnote 2.

**8.** W.Va. Const., art. 10, § 3 states:

> No money shall be drawn from the treasury but in pursuance of an appropriation made by law, and on a warrant issued thereon by the auditor; nor shall any money or fund be taken for any other purpose than that for which it has been or may be appropriated, or provided. A complete and detailed statement of the receipts and expenditures of the public moneys, shall be published annually.

W.Va.Code § 12–3–1 (1990) provides:

> Every person claiming to receive money from the treasury of the state shall apply to the auditor for a warrant for same. The auditor shall thereupon examine the claim, and the vouchers, certificates and evidence, if any, offered in support thereof, and for so much thereof as he or she finds to be justly due from the state, if payment thereof is authorized by law, and if there is an appropriation not exhausted or expired out of which it is properly payable, the auditor shall issue his or her warrant on the treasurer, specifying to whom and on what account the money mentioned therein is to be paid, and to what appropriation it is to be charged. The auditor shall present to the board of investments daily reports on the number of warrants issued, the amounts of the warrants and the dates on the warrants for the purpose of effectuating the investment policy of the board of investments. On the presentation of the warrant to the treasurer, the treasurer shall ascertain whether the warrant has been drawn in pursuance of an appropriation made by law, and if he or she finds it to be so, he or she shall in that case, but not otherwise, endorse his or her check upon the warrant, directed to some depository, which check shall be payable to the order of the person who is to receive the money therein specified; or the treasurer may issue a bank wire in payment of the warrant. If the check is not presented for payment within six months after it is drawn, it shall then be the duty of the treasurer to credit it to the depository on which it was drawn, to credit the state fund with the amount, and immediately notify the auditor to make corresponding entries on the auditor's books. No state depository may pay a check unless it is presented within six months after it is drawn and every check shall bear upon its face the words, "Void, unless presented for payment within six months." All claims required by law to be allowed by any court, and payable out of the state treasury, shall have the seal of the court allowing or authorizing the payment of the claim affixed by the clerk of the court to his or her certificate of its allowance; and no such claim may be audited and paid by the auditor unless the seal of the court is thereto attached as aforesaid. No tax or fee may be charged by the clerk for affixing his or her seal

We agree with the Board that the appellant's benefit payments should not commence from the date of the denial of her application in April 1994. After considering the evidence before the Board in 1994, we are unable to conclude that the Board erred in denying the appellant retirement benefits at that time. In 1996, however, the Board had before it what can only be considered additional evidence. A careful comparison of Dr. Bosley's 1993 report and his report submitted in 1996 reveals obvious differences. In 1993, in response to the question whether the appellant will ever be able to return to her position as a State Police Officer, Dr. Bosley wrote "Possibly—Not expected for at least 12 or more months." In response to the question whether the appellant will ever be able to be gainfully employed in any capacity, Dr. Bosley again wrote "Possibly." In answer to the query whether the appellant is totally and permanently disabled, Dr. Bosley replied "at this time." In contrast, in the report submitted in 1996, Dr. Bosley answered "no" to the first two questions and "yes" to the third. The 1993 report is marked by vagueness, indecision and equivocation; the report submitted in 1996 is definite and clear. According to the legislative rules of the Board, the parties can present additional evidence at the appeal hearing.[9] We believe that the second report of Dr. Bosley is new or additional evidence. Because of this, and in light of the other evidence before the Board in 1993, we cannot conclude that the Board erred in denying the appellant's application for disability retirement benefits at that time. Therefore, the appellant has failed to prove that her benefits should commence from April 1993.

Also, we agree that W.Va.Code § 15-2-30 (1994) clearly provides that an applicant for non-service-related disability retirement benefits from the death, disability and retirement fund of the department of public safety is retired by the Consolidated Public Retirement Board only after the applicant, "in the opinion of the retirement board, become[s] permanently disabled to the extent that such member cannot adequately perform the duties required of a member of the division [of public safety]." However, in reaching its opinion, the Board is governed by its administrative policies and rules. Because the Board violated its own policy by failing to schedule a hearing within sixty days after the appellant's initial request for an appeal, the appellant's benefit payments should commence from a date prior to the board's final decision. State administrative agency rules and regulations adopted pursuant to the Administrative Procedure Act have the force and effect of law. *See* W.Va.Code § 29A-1-1 (1982); *State ex rel. Kincaid v. Parsons,* 191 W.Va. 608, 447 S.E.2d 543 (1994). It is well-settled that "[a]n administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs." Syllabus Point 1, *Powell v. Brown,* 160 W.Va. 723, 238 S.E.2d 220 (1977); *see also McGrady v. Callaghan,* 161 W.Va. 180, 244 S.E.2d 793 (1978); *Trimboli v. Board of Ed. of Wayne County,* 163 W.Va. 1, 254 S.E.2d 561 (1979); and *Smith v. Bayer,* 182 W.Va. 495, 388 S.E.2d 851 (1989). "[F]airness requires administrative bodies abide by their rules until they are lawfully changed by law. This is especially true when an individual or company 'reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency.'" *C & P Telephone Co. v. Public Service Com'n,* 171 W.Va. 708, 714, 301 S.E.2d 798, 804 (1983). (Citations omitted).

The policy of the Board in effect on July 13, 1994, the date the appellant first requested an appeal, was filed on June 30, 1994 as proposed legislative rule 162 C.S.R. 2, "Consolidated Public Retirement Board Benefit Determination And Appeal." This proposed legislative rule was a modification, made at

---

to the certificate, referred to in this section. The treasurer and the board of investments shall jointly promulgate rules in accordance with the provisions of chapter twenty-nine-a [§ 29A-1-1 et seq.] of this code governing the procedure for such payments from the treasury.

9. 162 C.S.R. § 2-6 (1995) states in relevant part that "[a]t the [appeal] hearing, the applicant may represent himself or herself or may be represented by counsel or a representative and witnesses or written evidence may be submitted by both parties."

the request of Counsel of the Legislative Rule–Making Committee, of a proposed rule filed in the Office of the Secretary of State on October 25, 1993 as a "Notice of Agency Approval of a Proposed Rule and Filing with the Legislative Rule–Making Review Committee." The draft of the October 25, 1993 proposed rule explained that "[t]he Series 2 rules have been approved by the West Virginia Consolidated Public Retirement Board and have been filed as legislative rules. Although these rules have not been approved by the West Virginia Legislature, they are the current policy of the West Virginia Consolidated Public Retirement Board." Section 162–2–2.5 of the June 30, 1994 proposed rule provided that "[w]ithin 60 days of the notice from the application of the desire to appeal the decision, the hearing officer shall schedule a time and place to hear the appeal and give the applicant 10 days written notice of the hearing." This provision was ultimately authorized by the Legislature and became effective on May 3, 1995.[10]

■■■ We are aware that "final agency approval of the rule under this section is deemed to be approval for submission to the Legislature only and does not give any force and effect to the proposed rule." W.Va.Code § 29A–3–9 (1995) in part. However, the Board clearly stated that proposed rule 162 C.S.R. § 2–2.5 was its current policy, and this Court will hold an agency responsible for full compliance with its own statements of policy. *See Powell v. Brown, supra; Trimboli v. Bd. of Ed. of Wayne Cty., supra.* An

agency policy statement, rule, or regulation is not "a piece of fluff." *Trimboli* at 13, 254 S.E.2d at 567. "An executive agency must be rigorously held to the standards by which it professes its action to be judged. . . . He that takes the procedural sword shall perish with that sword." *Powell* at 728, 238 S.E.2d at 222, (*quoting* Justice Frankfurter writing in a separate opinion which concurred in part and dissented in part in *Vitarelli v. Seaton,* 359 U.S. 535, 546–547, 79 S.Ct. 968, 976, 3 L.Ed.2d 1012, 1021 (1959)). As noted above, the provision guaranteeing the scheduling of an appeal hearing within sixty days was approved by the Board and promulgated as its policy. Therefore, the administrative rules of the Consolidated Public Retirement Board, now set forth at 162 C.S.R. § 2–6 (1995), provide that when an applicant for non-service-related disability retirement benefits notifies the Board of the desire to appeal a decision, the Board's hearing officer has an affirmative duty to schedule a time and place to hear the appeal within sixty days of such notification.

We believe, therefore, that the Board, the circuit court and this Court have the authority to order the payment of disability retirement benefits that accrued prior to the Board's final determination that the appellant is permanently disabled. To hold otherwise would allow a wrong to exist without a remedy. Our task now is to determine the date from which these benefits are to be paid. Fortunately, we are not completely without guidance. The Legislature has stat-

---

**10.** The Consolidated Public Retirement Board began administering the various public retirement systems on July 1, 1991. *See* W.Va.Code § 5–10D–1(b). The Board operated under an emergency rule from July 1, 1991 until July 31, 1992. On September 22, 1993, a proposed rule was filed in the Office of the Secretary of State with an attached notice of a comment period to end on October 25, 1993. This proposed rule stated in § 162–8–2.5 that "[w]ithin 60 days of the notice from the applicant of the desire to appeal the decision, the hearing officer will schedule a time and place to hear the appeal and give the applicant 10 days written notice of the hearing." On October 25, 1993, the Board filed a new proposed rule explaining on the attached memorandum that the rule had been approved by the agency for filing with the Secretary of State and the Legislative Rule Making Review Committee for their review. This proposed rule

contained the same provision concerning the timely scheduling of appeal hearings as the proposed rule dated September 22, 1993. The proposed rule in effect on July 13, 1994 is discussed in the text of the opinion. 162 C.S.R. § 2–6 (1995) states in relevant part:

> The hearing officer shall conduct the [appeal] hearing. Within sixty (60) days of the notice from the application of the desire to appeal the decision, the hearing officer shall schedule a time and place to hear the appeal and give the applicant ten (10) days written notice of the hearing.

It is obvious, therefore, that the Board's policy concerning the time period in which to schedule appeal hearings has remained the same at least since September 22, 1993.

Also, we note that the procedure for agency rule making is found in W.Va.Code § 29A–2–9 *et seq.*

ed its policy in these matters in the area of grievance procedures for educational employees. For example, in Syllabus Point 3 of *Hanlon v. Logan County Bd. of Educ.*, 201 W.Va. 305, 496 S.E.2d 447 (1997), this Court stated:

> W.Va.Code § 18–29–3(a) (1992) (Repl. Vol.1994) makes mandatory the time periods within which grievances by educational employees must be filed, heard, and decided. If a grievance evaluator does not comply with the hearing and decision time periods, and his/her inaction does not come within one of the enumerated statutory exceptions, "the grievant shall prevail by default." W.Va.Code § 18–29–3(a) (1992) (Repl.Vol.1994).

In W.Va.Code § 18–29–3(a),[11] the Legislature recognized the importance that all parties to an administrative procedure abide by the time periods governing that procedure. The Legislature also provided an effective remedy when agencies fail to abide by these time limitations. Of course, the grievance procedures for state educational employees are different from those utilized by the Consolidated Public Retirement Board. We do not contend, therefore, that W.Va.Code § 18–29–3(a) in any way controls our decision here. Rather, we find this approach helpful in choosing an appropriate onset date under the facts of this case and where the relevant statutory scheme is silent.

In the instant case, the time period in which the hearing officer was to schedule a hearing in response to the appellant's request expired on September 11, 1994. We believe this to be the most appropriate onset date for the appellant's disability retirement award. This date marked the hearing officer's failure to abide by the Board's rules. This failure effectively stalled all efforts by the appellant to have her application reconsidered. The appeal hearing, in which additional evidence is presented, is a crucial step in the process culminating in the hearing officer's findings of fact, recommended decision, and the final order of the Board. After September 11, 1994, the Board was, in effect, in default, and, as a result, the appellant is entitled to prevail from that date. Also, we find the choice of any later date to be unduly speculative.[12]

■ We find, therefore, that when the Consolidated Public Retirement Board ultimately grants, on appeal, an application for non-service-related disability retirement benefits pursuant to W.Va.Code § 15–2–30 (1994), after initially failing to schedule a timely appeal hearing pursuant to 162 C.S.R. § 2–6 (1995), the Board, the circuit court and this Court have the authority to order the payment of disability retirement benefits that accrued prior to the Board's final determina-

---

11. W.Va.Code 18–29–3(a) (1992) states:

A grievance must be filed within the times specified in section four [§ 18–29–4] of this article and shall be processed as rapidly as possible. The number of days indicated at each level specified in section four of this article shall be considered as the maximum number of days allowed and, if a decision is not rendered at any level within the prescribed time limits, the grievant may appeal to the next level: Provided, That the specified time limits may be extended by mutual written agreement and shall be extended whenever a grievant is not working because of such circumstances as provided for in section ten [18A–4–10], article four, chapter eighteen-a of this code. Any assertion by the employer that the filing of the grievance at level one was untimely must be asserted by the employer on behalf of the employer at or before the level two hearing. If a grievance evaluator required to respond to a grievance at any level fails to make a required response in the time limits required in this article, unless prevented from doing so directly

as a result of sickness or illness, the grievant shall prevail by default. Within five days of such default, the employer may request a hearing before a level four hearing examiner for the purpose of showing that the remedy received by the prevailing grievant is contrary to law or clearly wrong. In making a determination regarding the remedy, the hearing examiner shall presume the employee prevailed on the merits of the grievance and shall determine whether the remedy is contrary to law or clearly wrong in light of that presumption. If the examiner finds that the remedy is contrary to law, or clearly wrong, the examiner may modify the remedy to be granted so as to comply with the law and to make the grievant whole.

12. We note that, according to proposed legislative rule 162 C.S.R. § 2–6 (June 30, 1994), the hearing officer has sixty days after receiving all the evidence, in which to prepare formal findings. These findings are to be presented to the Board at its next regular meeting. Only after receiving these findings does the Board make a final decision pursuant to W.Va.Code § 15–2–30.

tion that the appellant is permanently disabled.

We caution that our decision is based on the peculiar facts of this case. Under different facts, the determination as to when an applicant's disability retirement benefit payments should commence may be based on an event other than the one chosen here. We only state that in all situations where the Board fails to abide by its own administrative policies and rules, the appropriate remedy is that which best repairs the loss suffered by the applicant as a result of the Board's failure. Also, we emphasize that *when there is no failure by the Board to provide a timely hearing in accordance with its rules, the payment of disability retirement benefits is to commence according to the terms of W.Va. Code § 15–2–30 (1994).*

As noted above, the Board advances several arguments in support of its decision to make the appellant's award "prospective," that is, from the date of its final decision, which we will respond to briefly. First, the statutory language relied upon by the Board does not grant the Board unlimited discretion in determining whether an applicant is permanently disabled. Rather, this language must be read in *pari materia* with accompanying code sections and administrative rules which govern the manner and time in which the Board's determination is to be made. In order to guarantee that the Board abides by these rules, the Administrative Procedure Act provides for circuit court review of administrative decisions set forth above.

■ Second, we believe the Board's reliance on W.Va. Const., art. 10, § 3 and W.Va. Code § 12–3–1 is misplaced because the payment of retirement benefits to the appellant commencing from September 11, 1994 does not constitute an unauthorized payment of public moneys. Rather, such a payment is authorized by the Legislature's creation of the Consolidated Public Retirement Board and the statutes and rules created or approved by the Legislature for that Board's administration of the death, disability and retirement fund of the department of public safety. The payment of disability retirement benefits beginning from September 11, 1994 conforms to these statutes and rules. In addition, we do not believe such a payment of benefits is retroactive. In *Skaff v. Pridemore,* 200 W.Va. 700, 490 S.E.2d 787 (1997), we applied this Court's reasoning in *Gribben v. Kirk,* 195 W.Va. 488, 466 S.E.2d 147 (1995), and found that a back pay award commencing, not from the final order, but from the date of the appellees' grievance board complaint, was prospective in nature. We believe, therefore, that an award commencing anytime on or after the appellant's first request for an appeal hearing should be considered prospective. The reasoning in *Gribben* and *Skaff* flowed from this Court's implicit recognition that "relief should not be limited to the vagaries of how long litigation requires to run its course." *Gribben* at 498, 466 S.E.2d at 157. Similarly, in the instant case, our decision is based on our belief that administrative agencies cannot with impunity contravene their own policies and rules, to the substantial detriment of innocent parties who depend upon those rules, without the availability of a remedy to, as much as possible, make the innocent party whole.

In conclusion, we find the circuit court erred in holding the questions of law presented here were correctly decided by the Consolidated Public Retirement Board on the issue of payment of disability benefits to the appellant for the time period in which she was wrongly denied an appeal hearing. Therefore, we reverse the circuit court's order and remand this case for the circuit court to enter an order consistent with this opinion.

Reversed and remanded with directions.

STARCHER, Justice, concurring:

(Filed Aug. 7, 1998)

While the Consolidated Public Retirement Board clearly erred in this case by not giving the claimant a hearing for two years, I do not believe that this fact was dispositive to the Court's decision. The dispositive question for the Board in awarding disability retirement benefits should simply be this: on what date, in the opinion of the Board, does the evidence reasonably show that an applicant for disability retirement benefits was permanently, totally disabled? Our analogous decisions concerning the "onset" date

for permanent total disability under our workers' compensation statutes provide ample guidance for how the Board can answer this question.

*W.Va.Code,* 15–2–30 [1994] states that a member of the Division of Public Safety becomes eligible for non-service-related disability retirement benefits when the member "become[s] permanently disabled to the extent that such member cannot adequately perform the duties required...." In the context of workers' compensation, we have defined the date a claimant becomes permanently disabled as "the first date on which medical or other expert evidence indicated that such permanent total disability existed." Syllabus, in part, *Miracle v. Workers' Compensation Comm'r,* 181 W.Va. 443, 383 S.E.2d 75 (1989). When a claimant has several expert reports indicating permanent total disability status, the Workers' Compensation Division has reasonable discretion to select the beginning date for the payment of the award of permanent total disability benefits. "The selection should be based on the dates upon which the experts found the claimant to have been permanently and totally disabled." Syllabus Point 2, in part, *Young v. Workers' Compensation Comm'r,* 181 W.Va. 440, 383 S.E.2d 72 (1989).

The Consolidated Public Retirement Board's opinion as to whether an applicant is disabled should similarly be based on the reliable expert evidence in the record, and the Board should determine that disability begins on the first date on which medical or other expert evidence indicates that permanent total disability existed. In this case, on December 23, 1994, the appellant's treating physician first gave his opinion that the appellant was permanently and totally disabled. I would therefore find that the appellant became firmly entitled to disability benefits on that date.

The Court concluded that the appellant's benefits should be paid from September 11, 1994, sixty days after she filed her appeal of the Board's rejection of her application for disability retirement benefits. On the facts of this case, I believe that this remedy is equitable. I am uncomfortable, however, with the majority opinion's analysis of the constitutional and statutory authority for this award, and agree that this part of the opinion is limited to those facts.

The Board's ability to award disability retirement benefits appears from the majority opinion to be a complex multi-step analysis of constitutional provisions, statutes and regulations. In fact it boils down to a simple, fair, common-sense rule: disability benefits can and should be awarded by the Board from the date that the reliable expert evidence in the record establishes that the applicant is permanently and totally disabled.

I therefore concur.