# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Clay R. Hupp,**
**Petitioner Below, Petitioner**

**FILED**

June 13, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 13-0811** (Tyler County 11-AA-1)

**West Virginia Consolidated Public**
**Retirement Board,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Clay R. Hupp, by counsel Richard A. Monahan, appeals the order of the Circuit Court of Tyler County, entered July 3, 2013, affirming the administrative decision of Respondent West Virginia Consolidated Retirement Board to terminate petitioner's partial-duty retirement benefits. Respondent appears by counsel, J. Jeaneen Legato.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was awarded disability retirement benefits based on duty-related hearing loss from the State Police Death, Disability and Retirement System on October 30, 1999, when he was approximately forty-six years old, after twenty-two years of service with the West Virginia State Police. He subsequently served as the elected Sheriff of Tyler County from 2001 to 2008, and then worked part-time as a security officer.

As a condition of his disability retirement, petitioner was required to undergo periodic recertification examinations. For the most recent of these examinations, he was evaluated by Dr. Marsha Bailey on behalf of respondent on August 10, 2010. Dr. Bailey reviewed petitioner's medical records, but did not perform independent testing. She reviewed petitioner's audiograms from 1999 and 2009, and noted no significant change between the two. She stated that petitioner obtained hearing aids in 1999 or 2000 and upgraded to digital hearing aids in 2004. Dr. Bailey concluded:

> It is reasonable to assume that his hearing loss is a result of his work as a West Virginia State Trooper. It is my understanding [petitioner] retired after 22 years of service with the West Virginia State Police. He went on to serve as Sheriff of Tyler County from January 2001 through December 31st, 2008. [Petitioner]

1

currently works as a part time Security Guard. Obviously [petitioner] is not disabled for law enforcement work. [Petitioner's] hearing loss is not uncommon in the West Virginia State Police and we have several active Members with his degree of hearing loss or worse that continue to work as a West Virginia State Trooper.

Dr. Bailey also completed a recertification form based on her examination. In response to question number six on the Medical Recertification Form ("In your opinion: Has the individual recovered from his or her previously determined probable permanent disability to the extent that he or she is able to perform adequately the essential duties of a law enforcement officer?"), Dr. Bailey circled "yes" and wrote that petitioner "was never disabled as a law enforcement officer." Based on Dr. Bailey's report, respondent voted to terminate petitioner's disability retirement benefits.

Petitioner requested an administrative hearing, and a hearing was conducted on February 1, 2011. The hearing examiner forwarded his recommended decision to respondent by letter dated April 27, 2011, finding that petitioner could perform the duties required of a state trooper, and noting: "Significant in this finding is that the only physician to opine on the subject was Dr. Bailey, who stated, as noted above, that [petitioner] had improved." Respondent adopted the recommended decision on May 26, 2011. Petitioner appealed the decision to the Circuit Court of Tyler County, and the circuit court entered its order on July 3, 2013, affirming the final order of the retirement board based on its finding that petitioner is capable of performing the duties of a state trooper. Petitioner appealed.

We have described the standard of review as follows:

In considering [petitioner's] appeal, this Court applies the same standard of review that the circuit court applied to the Board's administrative decision. We held in syllabus point one of *Black v. State Consol. Public Retirement Bd.*, 202 W.Va. 511, 512, 505 S.E.2d 430, 431 (1998), that

> "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' Syllabus Point 2, *Shepherdstown V.F.D. v.*

2

*W.Va. Human Rights*, 172 W.Va. 627, 309 S.E.2d 342 (1983)."

Furthermore, in syllabus point two of *Black*, we declared that

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus Point 2, *Walker v. West Virginia Ethics Com'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

202 W.Va. at 513, 505 S.E.2d at 432.

*McNeely v. W.Va. Consol. Pub. Ret. Bd.*, 226 W.Va. 553, 559, 703 S.E.2d 524, 530 (2010). Petitioner sets forth seven assignments of error related to the discontinuation of his disability retirement benefits pursuant to West Virginia Code § 15-2-31 (1994), which at the time petitioner received his award of benefits provided:

> The consolidated public retirement board may require any member who has been or who shall be retired with compensation on account of disability to submit to a physical and/or mental examination by a physician or physicians selected or approved by the board and cause all costs incident to such examination including hospital, laboratory, X-ray, medical and physicians' fees to be paid out of funds appropriated to defray the current expense of the division, and a report of the findings of such physician or physicians shall be submitted in writing to the consolidated public retirement board for its consideration. If from such report or from such report and hearing thereon the retirement board shall be of the opinion and find that such disabled member shall have recovered from such disability to the extent that he or she *is able to perform adequately the duties of a member of the division*, the board shall order such member to reassume active duty as a member of the division and thereupon all payments from the death, disability and retirement fund shall be terminated. If from the report or the report and hearing thereon, the board shall be of the opinion and find that the disabled member shall have recovered from the disability to the extent that he or she is able to engage in any gainful employment but unable to adequately perform the duties required as a member of the division, the board shall order the payment, in monthly installments of an amount equal to two thirds of the salary, in the case of a member retired under the provisions of section twenty-nine [§ 15-2-29] of this article, or equal to one half of the salary, in the case of a member retired under the provisions of section thirty [§ 15-2-30] of this article, excluding any compensation paid for overtime service, for the twelve-month employment period preceding the disability: Provided, That if the member had not been employed with the division for twelve months prior to the disability, the amount of monthly salary shall be annualized for the purpose of determining the benefit.

3

[Emphasis supplied.]

Petitioner's first assignment of error is that the Board's physician, when she determined that petitioner was *never* disabled, thwarted the purpose of this statute, which is designed only to allow the Board to determine whether existing disability continues. Though Dr. Bailey offered a conclusion outside the bounds of the recertification examination inquiry when she stated that petitioner was never disabled, we do not believe that her statement obfuscates the issue.[1] Dr. Bailey clarified that "hearing loss is not uncommon in the West Virginia State Police and we have several active [m]embers with [petitioner's] degree of hearing loss or worse that continue to work. . . ." Regardless of Dr. Bailey's opinion about petitioner's degree of disability at the time that he was certified to have a duty-related disability, she adequately conveyed the information that was necessary for the recertification process: that petitioner currently is "able to perform adequately the duties of a member of the division."

Petitioner also argues that the evidence does not support the Board's determination that he is not disabled because (as explained in his second assignment of error) he suffers from irreversible and progressively-worsening high-frequency hearing loss and (as explained in his fourth assignment of error) his disability is improved only through the use of hearing aids, which are prohibited by State Police rules regarding medical standards.[2] We agree with respondent that the particular rule cited by petitioner is contained within a series entitled "Cadet Selection" and, inasmuch as petitioner is a long-time member of the department, is inapplicable to the question before this Court. Furthermore, because there is no evidence that hearing aids are prohibited for State Police officers, and because petitioner's condition is improved through the use of hearing aids, it is irrelevant that petitioner's hearing loss is irreversible and progressive.[3] Petitioner obtained hearing aids after the certification of his disability for retirement purposes, and the use

---

[1] Despite Dr. Bailey's having opined that petitioner was "never disabled[,]" respondent has not sought repayment of any portion of the benefits previously paid to petitioner.

[2] At the time that petitioner was certified disabled, the West Virginia State Police had enacted the following rule:

> 8.2.2.1. Hearing Acuity—Using an audiometer, the applicant should have no average loss of 25 or more decibels at the 500, 1000, 2000, and 3000 Hertz (Hz) levels in either ear with no single frequency loss in excess of 40.

W.Va. Code R. § 81-2-8.2.2.1 (June 15, 1998).

[3] We recognize that "it is . . . well accepted by experts that once exposure to noise ceases, hearing loss existing at that time must also cease any progression, unless other factors are involved in creating the hearing loss." *Bilbrey v. Workers' Comp. Comm'r*, 186 W.Va. 319, 323, 412 S.E.2d. 513, 517 (1991). Petitioner has not performed duties as an officer of the State Police in nearly fifteen years, and it is unlikely that any further progression in his hearing loss is attributable to that employment. Petitioner appears to concede this in his petition for appeal.

4

of hearing aids has rendered him capable of performing the duties of a State Police officer.

Petitioner's third assignment of error is that the Board unconstitutionally applied 2005 law—enacted approximately six years after he retired, and approximately twenty-eight years after he first became a member of the State Police—when it revoked his disability retirement benefits. Petitioner's argument is based on Dr. Bailey's affirmative response to question number six on the Medical Recertification Form ("In your opinion: Has the individual recovered from his or her previously determined probable permanent disability to the extent that he or she is able to perform adequately the essential duties of a law enforcement officer?"), which compares a retiree's condition to a "law enforcement officer"[4] rather than "a member of the division"[5] as set forth in the statute that was in effect at the time of petitioner's retirement. As we noted above, however, Dr. Bailey explained that several active State Police members continued to work with degrees of hearing loss at least comparable to that of petitioner. It is clear that petitioner's ability was compared to the duties required of a member of the West Virginia State Police, and not

---

[4] West Virginia Code § 15-2-31 (2009) provided:

> The board may require any retirant who has been retired with compensation on account of disability to submit to a physical and/or mental examination by a physician or physicians selected or approved by the board and cause all costs incident to the examination including hospital, laboratory, X-ray, medical and physicians' fees to be paid out of funds appropriated to defray the current expense of the agency and a report of the findings of the physician or physicians shall be submitted in writing to the board for its consideration. If, from the report or from the report and hearing on the report, the board is of the opinion and finds that the disabled retirant has recovered from the disability to the extent that he or she is *able to perform adequately the duties of a law-enforcement officer*, the board shall order that all payments from the fund to that disabled retirant be terminated. If, from the report or the report and hearing on the report, the board is of the opinion and finds that the disabled retirant has recovered from his or her previously determined probable permanent disability to the extent that he or she is able to engage in gainful employment but remains unable to adequately perform the duties of a law-enforcement officer, the board shall order the payment, in monthly installments of an amount equal to two thirds of the salary, in the case of a retirant retired under the provisions of section twenty-nine [§ 15-2-29] of this article or equal to one half of the salary, in the case of a retirant retired under the provisions of section thirty [§ 15-2-30] of this article, excluding any compensation paid for overtime service, for the twelve-month employment period immediately preceding the disability award: Provided, That if the retirant had not been employed with the Fund for twelve months immediately prior to the disability award, the amount of monthly salary shall be annualized for the purpose of determining the benefit.

(Emphasis supplied.)

[5] *See* W.Va. Code § 15-2-31 (1994).

5

simply of a general law enforcement officer.

In his fifth and sixth assignments of error, petitioner argues that the circuit court failed to acknowledge the precedential value of a prior hearing examiner's recommended decision (involving a different retiree) stating that hearing aids are insufficient to address the "abnormal life-threatening situations" that might be encountered by hearing-impaired officers, and further ignored the Circuit Court of Kanawha County's decision (involving that same retiree) that found the termination of benefits was inadequate in light of the lack of evidence of medical improvement.[6] Petitioner urges us to apply these principles to the case before us. With regard to the precedential value of administrative agency decisions, this Court has indicated that a

> lack of uniformity is unavoidable—after all, administrators are not automatons— and does not in and of itself invalidate agency action. While a certain amount of asymmetry is lawful, an agency may not adopt[] significantly inconsistent policies that result in the creation of conflicting lines of precedent governing the identical situation. The precept counseling avoidance of inconsistent administrative policies at least demands that when an agency departs significantly from its own precedent, it must confront the issue and explain the reasonableness of its current position. Before this Court, an agency will not be permitted to [flit] serendipitously from case to case, like a bee buzzing from flower to flower, making up its rules and policies as it goes along.

*State ex rel. Hoover v. Berger*, 199 W.Va. 12, 19, 483 S.E.2d 12, 19 (1996) (quotations and citations omitted). Similarly, circuit court decisions in and of themselves have no precedential value in this Court. *State ex rel. Miller v. Stone*, 216 W.Va. 379, 382, 607 S.E.2d 485, 488 (2004). The recommended decision cited by petitioner does not appear to have been ultimately adopted by respondent, and we thus are not faced with the concern described in *Hoover* that respondent has a pattern of departing from its own precedent.

Finally, petitioner argues that the circuit failed to liberally apply disability statutes and regulations. This assignment of error, however, is supported only by a short recitation of case law citations, and is presented in a conclusive fashion, without reference to the appendix record on appeal. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that petitioner's brief contain an argument demonstrating clearly the points of fact and law presented. That rule also requires that such argument "contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal." *Id*. Petitioner's final assignment of error is wholly unsupported by evidence in that it is completely devoid of appropriate and specific citations as contemplated by our rule. Thus, we need not further consider this assignment of error.

---

[6] *See Burdette v. W.Va. Consol. Pub. Ret. Bd.*, Civil Action No. 11-AA-131 (Kan. County Cir. Ct. May 18, 2012).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2014

**CONCURRED IN BY:**

Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin

Justice Ketchum, concurring:

I concur in the reasoning of the majority and write separately to draw attention to an additional issue. In 1999, when petitioner took disability retirement benefits, W.Va. Code § 15-2-29 (1995) provided, in part:

> . . . The member thereafter shall be entitled to receive annually and there shall be paid [benefits] to such member from the death, disability and retirement fund in equal monthly installments during the lifetime of such member; *or until the member attains the age of fifty*; or until such disability shall sooner terminate . . .

(Emphasis supplied.) The language highlighted above—"or until the member attains the age of fifty"—remained in West Virginia Code § 15-2-29 until the passage of legislation that became effective in June of 2007.[7]

When petitioner appeared for his recertification examination on August 10, 2010, he was approximately fifty-six years old[8], had been a member of the West Virginia State Police for

---

[7] The legislature enacted a new retirement system known as The West Virginia State Police Retirement Act, W.Va. Code § 15-2A-1 to 15-2A-19, in 1994. It is designed to govern members hired March 12th of that year and after. *See Booth v. Sims,* 193 W.Va. 323, 331 n. 6, 456 S.E.2d 167, 175 n. 6 (1994). Petitioner was hired in 1977.

[8] Petitioner's birth date has been redacted from documents contained in the appendix record on appeal, and his precise age is thus not clear. Neither party disputed the circuit court's finding that petitioner was born in 1953.

7

almost thirty-three years, and was credited with nearly three years of military service[9]. Petitioner, then, reached the age of fifty at a time when the statute required that his disability retirement benefits be converted to general retirement benefits upon his attaining the age of fifty. Inasmuch as petitioner's disability retirement benefits should earlier have been discontinued on the basis of his age, the circuit court did not err when it affirmed respondent's decision to terminate those benefits.

---

[9] Similarly, the law in effect at the time that petitioner applied for and received disability retirement benefits required that "[t]he retirement board shall retire any member of the division of public safety when the member has both attained the age of fifty-five years and completed twenty-five years of service as a member of the division, including military service credit. . . ." W.Va. Code § 15-2-27(a) (1995). It further provided that "[w]hen a member has or shall have served twenty years or longer but less than twenty-five years as a member of the division and shall be retired under any of the provision of this section before he or she shall have attained the age of fifty years, payment of monthly installments of the amount of retirement award to such a member shall commence on the date he or she attains the age of fifty years. W.Va. Code § 15-2-27(c) (1995). The circuit court noted that petitioner applied for and began receiving regular retirement benefits on December 1, 2010, on the basis of twenty-five years of service, with twenty-two of those spent in contributing service and three spent in military service.